# CHARLESTON.

HOLT *et al.* v. HOLT *et al.*

Submitted June 16, 1892.—Decided December 15, 1892.

1. COMMISSIONER IN CHANCERY — REPORT — EVIDENCE — EXCEPTIONS.

When the report of a commissioner is not excepted to while it remains in his office, and before it has been returned into court, the evidence, which was before the commissioner, on which he acted in making his report, is no part of such report, unless made so by order of the court, or by the report itself. (p. 324.)

2. COMMISSIONER IN CHANCERY — REPORT — EVIDENCE — EXCEPTIONS.

Where no exceptions have been filed to the report of a commissioner while it remained in his office, and before he returned the same into court, it is not the duty of the commissioner, unless required by the court to do so, to return with his report the evidence which was before him, on which he acted in making his report; and if a party afterwards excepts thereto, the court, in considering such exceptions, will only regard such errors as appear upon the face of the report. (p. 325.)

3. COMMISSIONER IN CHANCERY—REPORT.

It is the duty of the commissioner to return the decrees, orders, and notices under which he acted, in order that the court may see that they have been properly executed. (p. 329.)

4. COMMISSIONER IN CHANCERY—REPORT.

If there has been a previous account, he shall not copy it into his report, but, taking it as the basis of his report correct the er-

39

rors and supply the defects thereof by an additional statement. (p. 327.)

R. F. FLEMING, O. JOHNSON and R. F. KIDD for appellants.

I.—*Partners having made a valid settlement of the partnership transactions, are concluded by the settlement as to any matters embraced therein.*—17 Gratt. 322, p't 8 Syll.

II.—*Laches, as relied on by exceptions to each transaction and item in the aggregate reported and decreed.*—21 W. Va. 470, p't 6 Syll.; 24 W. Va. 594, p't 4 Syll.; 17 Gratt. 321, p't 4 Syll.

III.—*Exceptions to a Commissioner's report must be filed during the "ten days" or at the first term of the court, or by leave of the court after said term.*—Code c. 129, s. 7; Acts 1882, c. 57, s. 7.

IV.—*If there are infant defendants, the court examine evidence although report not excepted to. Error to confirm in absence of legal evidence to prove the debts reported.*—8 W. Va. 218, p't 10 Syll. Opinion of the court, pp. 233-4.

V.—*Administrator has exclusive right for six months after he qualifies in which to bring a suit to convene creditors and subject real estate to sale.*—Code c. 86, s. 7; Acts of 1882, c. 69, § 7; 28 W. Va. 378, p't 1 Syll. and opinion, pp. 384, 385.

VI.—*Clerk's "Notice to Creditors," Court to designate newspaper.*—Code c. 86, s. 8; Acts of 1882; c. 69, § 8.

VII.—*Statutes of this character mandatory.*—24 W. Va. 730, p't 6 Syll. and opinion of the Court 740.

VIII.—*Guardian ad litem must be appointed when infants made defendants and must act and defend in all further proceedings.*—Code, c. 125, s. 13; Acts of 1882, c. 71, § 13; 6 Munf. 99, p't 1 Syll.; 6 W. Va. 370; 12 W. Va. 184, p't 5 Syll. and opinion of the Court 210, 211.

R. G. LINN and N. M. BENNETT for appellees.

I.—*Liability of administrator upon his official bond.*—4 Min. Inst. 1229; 17 Gratt. 300; 8 Leigh 54; 76 Va. 85; 29 W. Va. 286; 32 W. Va. 526.

II.—*No Exceptions having been taken to report of commissioner within ten days and the evidence not having been returned by*

*him, his report should be assumed to be correct except for er-rors on its face.*—24 W. Va. 525; 25 W. Va. 416.

III.—*Laches and the statute of Limitations do not apply to this suit.*—Code (1868) c. 87, s. 6; 28 W. Va. 322; 76 Va. 85; 20 W. Va. 244; 26 W. Va. 821; 7 W. Va. 585; Id. 611; 5 Leigh 583; 79 Va. 163; Per. Tr. § 863; 29 Gratt. 702; 1 Gratt. 432; 11 Leigh 480; Code, c. 104, s. 7; 75 Va. 431.

IV.—*Matters excepted to and re-committed by the court.*—26 W. Va. 729; 2 Gratt. 117.

V.—*Necessary to bring personal representative and heirs at law.* —Bar. Ch'y Pr. §§ 58, 68; 33 W. Va. 600.

VI.—*Clerical error should be corrected here.*—26 W. Va. 569; Code (1887) c. 134, s. 6; 24 W. Va. 511.

ENGLISH, JUDGE:

This was a suit in equity, brought by Thomas B. Hughes and Louisa, his wife, John Holt, Rebecca Holt, Margaret Holt, Mathew S. Holt, Bernard Doyle, and Laura, his wife, and Charles B. Holt (who was an infant and sued by his next friend, John Holt) against J. F. W. Holt, late sheriff of Gilmer county, and as such administrator *de bonis non* with the will annexed of Mathew Holt, deceased. The bill was filed at the August rules, 1873, in the Circuit Court of Gilmer county.

The plaintiffs alleged that they were the children of Mathew Holt, deceased;—that the estate of said Mathew Holt was committed to the said J. F. W. Holt, late sheriff of Gilmer county, with powers to administer all the rights, goods and chattels belonging to the said estate, and that he was so appointed by the said Circuit Court, and that as such administrator he received into his hands, to administer according to law, many claims and debts due to the decedent;—that they believed he had made many collections of money due to the said estate, arising from a bond or bonds of the United States, and that he had collected other moneys belonging to said estate, to which they were entitled, as children and heirs at law of the said Mathew Holt, deceased; but how much of said moneys had been collected, belonging to said heirs, was not known, and how

many of the claims remain unpaid, in part or in whole, said plaintiffs were unable to state.

They called upon said defendant for a full and specific exhibition of all moneys so collected, and of the debts and claims due the decedent in his lifetime, which came into his hands; also, to state distinctly the names of each and every debtor, the amount due from them, and the evidence of such debts and claims, specifying how much was for principal, how much for interest, and the name of the debtor or debtors, and that he make a full and complete settlement of all his administrator's accounts.

They further charged that they learned that the said administrator and decedent were partners in merchandising for many years prior to the death of the decedent, and accumulated many debts and claims due the firm; that it was supposed many of these debts were collected by the defendant before he became administrator; and they called for a full exhibit of such collections, and if necessary, in furtherance of this object, that the defendant be required to file a list of all claims which would and did come into his hands as survivor of said firm, itemizing the same, specifying those actually and fully paid and those partially paid;—that in course of said partnership transactions the firm acquired, by patent and by purchase, various tracts of land;—that some, at least, were held by title-bond and conveyed by the vendor, the said defendant, and subsequently sold by him, as the holder of the legal title, for the benefit of said firm, and the purchase-money arising therefrom came into the hands of the defendant, to be accounted for by him as administrator; and they called upon the defendant for a full exhibit of all the lands sold, the money acquired therefrom, and when received, and, to this end, that he furnish a list of all real estate acquired during the partnership and a statement of its disposition.

They also alleged that the defendant had not settled his administration accounts according to law, and they called upon him to do so.

On the 14th day of March, 1874, the defendant J. F. W. Holt, filed his answer to the plaintiffs' bill, to which the plaintiffs replied generally, and the cause was referred to a

commissioner to take and state the partnership accounts between the defendant and M. H. Holt, deceased, and to settle the administration accounts of the defendant on the estate of M. H. Holt, deceased. Said commissioner was directed to report such special matter as he might deem pertinent, or, being pertinent, that might be required by any of the parties, with leave to examine any of the parties on interrogatories.

The said defendant in his answer says that said Mathew Holt left a will, and that Thomas B. Hughes and R. F. Fleming qualified as executors thereof;—that they collected and realized nearly, if not quite, all the solvent assets of said estate, except a certain debt due from James Webb, below mentioned, and administered the same;—that, after the solvent assets of said estate had been so realized by said executors, the estate was committed to defendant, then sheriff of Gilmer county, to be administered by him in the character of administrator *de bonis non* with the will annexed;—that the remnant of the estate which thus came to his hands consisted only of bad, uncollectible, insolvent debts, which were not capable of being collected, and which he had not collected, by reason of their insolvency;—that to sue on said claims was simply to waste the estate in costs. He denied that moneys came into his hands as such administrator, except as therein stated, or that any bond of the United States ever came into his hands as such administrator. He admits that there was paid to him as such administrator, by James Webb, on account of money due from him for land sold to him by Mathew Holt in his lifetime, the sum of two hundred and fifty five dollars and thirty five cents; that being the amount due said estate, as decreed by the Circuit Court of Gilmer county in the case of James Webb against said Mathew Holt's representatives and others. And that he had no recollection of ever receiving any other money in his character as such administrator.

He says he will file with his answer a list of the claims which came to his hands, as administrator, from the hands of said executors, Hughes and Fleming, none of which, to the best of his recollection, had ever been collected by him.

by reason of their insolvency;—that these claims were not the sole property of the estate of Mathew Holt, for reasons stated by defendant as follows: "On the 25th day of January, 1859, the firm of M. & J. F. W. Holt, which was composed of Mathew Holt and defendant, was dissolved, and a large amount of claims due the firm went into the hands of said Mathew Holt, which he collected, partly, in his lifetime; and the residue then went into the hands of his executors, by whom all that were solvent were collected, and the remnant, which were insolvent, were turned over by said executors, on their resignation as such, and came to defendant, on the said estate being committed to his hands. He further says that he paid out, on debts chargeable against said Mathew Holt's estate, more than the sum so paid by James Webb; the debts on which the same was paid being debts against said Mathew Holt individually, and against the firm of M. & J. F. W. Holt.

And so defendant says that, as such administrator of the estate of Mathew Holt, deceased, he owes nothing to said estate, but on the contrary, on settlement, the said estate would be found indebted to him;—that the claims so coming into his hands as administrator were exclusively claims in favor of said firm, and in them defendant, as a partner, had an interest;—that, if there were any claims due to Mathew Holt individually, which came into hands of defendant as administrator, he did not remember them then; but if any, he would specify them in the list which he would furnish.

As to the second branch of the bill, which seeks to charge him in the character of surviving partner in the firm of M. & J. F. W. Holt, he says, as above stated, a dissolution of said firm took place on the 25th day of January, 1859, and each one of parties, under an agreement between them, took into his hands a portion of the assets of the firm, in the shape of notes, claims, and property to be collected by them, respectively, to satisfy the firm-debts and their interests in the firm, and for which they were to account on a final settlement;—that Mathew Holt received into his hands, in this way, a large amount of the assets of the firm, and he and his executors, Hughes and Fleming,

collected and realized the bulk of the same;—that defendant, under this arrangement, took and received into his hands, of the assets of the firm, probably a larger amount than that received by Mathew Holt;—that, of all the notes, claims, and property so received by defendant, a full, precise, itemized account, recorded in a book, was furnished by him to the said Mathew Holt, and was returned by him, and is, or at least ought to be, in the hands of his family;—so that they have better means of specifying, itemizing, and detailing the assets which went into defendant's hands, than he had, after so long a period, and after the claims which he did receive have been, many of them, paid and delivered to the persons owning the same;—that a detailed record book of these assets was delivered into the possession of Mathew Holt, and the plaintiffs have means of specifying and particularizing said assets, if they have possession of said book, better than this defendant, as he has no means now of detailing and particularizing the said claims; but that he was ready at any time, and desirous, to close up and finally settle said matter, to the best of his ability.

Defendant further states that in the month of November, 1868, Thomas B. Hughes and R. F. Fleming, as executors of the said Mathew Holt, and defendant entered into the work of settling the account subsisting between the defendant, as surviving partner of said firm, and the estate of said Mathew Holt, deceased, and in this settlement various items were allowed as debits and credits;—that the amounts which were admitted by said executors to have been paid by defendant on the partnership indebtedness were ten thousand one hundred and ninety one dollars and fifty eight cents, and an itemized account of the debts against the firm, paid by defendant, dated November 23, 1868, was recorded in a book now in possession of defendant, signed by said Hughes and Fleming, executors, and defendant; and he exhibits a copy thereof;—that the vouchers showing such payments were, on the signing of said accounts of payments of debts, delivered by defendant to said Hughes and Fleming, as acknowledged by said executors in writing, at the foot of said account, which book he offered to produce in court or before a commissioner;—that in addition to the

debts paid by defendant, and specified in said account, other payments made by defendant prior to the date of said account, and not specified therein, in discharge of said partnership indebtedness, have been since discovered by defendant, and still other payments have been made on the partnership indebtedness since the date of said account, amounting to a considerable sum in addition to the sum acknowledged in said account;—that on the other hand, at the time of said settlement with said executors, the defendant rendered them an account of which he had collected or was chargeable with as surviving partner, amounting to a large sum, which list was likewise, as defendant thinks, signed by the parties, and delivered and left in the hands of said executors, which account of collections, as he remembers it, in the absence of said account, amounted to between six thousand dollars and eight thousand dollars, but that it was developed on settlement that a large balance was due defendant from said estate; and he calls on the said Hughes and his coplaintiffs to produce the said vouchers delivered to him as above stated, showing his payments on the firm indebtedness, and also to file the statement of account furnished by defendant to said executors, of moneys collected by him, which papers are in the possession of said Hughes or his coplaintiffs;—that a great number of the debts in his hands, in favor of the firm, were insolvent;—that the late war between the states, inevitably, in its turmoil and destruction, caused the loss of many debts, and that proceedings in bankruptcy by debtors of said firm caused the loss of somewhere between five thousand dollars and seven thousand dollars of said debts, and that defendant has now, in addition to those, lost, by bankruptcy, claims amounting to from two thousand dollars to four thousand dollars, utterly insolvent; that during the continuance of the war no proceedings for the collection of said debts could be prosecuted, and the ravages of the war, when over, rendered them worthless.

He denied that he owed anything to the estate of Mathew Holt, as partner in the firm of M. & J. F. W. Holt, and asserted that on the contrary, on a fair settlement, a balance of from three thousand to five thousand dollars would be

found due him ;—that some lands did belong to said firm and that some were sold, and the proceeds realized by Mathew Holt, and some by defendant, but that they have been accounted for in the statement rendered to the executors as aforesaid, and that, including the lands sold, which in this answer he has treated as partnership assets, a large balance will be found due him ;—that there are some lands yet unsold, which belong to the firm, a list of which he will furnish. That neither as administrator nor as surviving partner is he indebted to the estate of said Mathew Holt, but, on the contrary, said estate is indebted to him, as will be found on proper settlement ;—that said estate has some property liable to its debts.

He prays that whatever balance may be found due him from said estate be decreed to him, and the real and per-·sonal estate left by said Mathew Holt be subjected to the payment thereof, *etc.*

At the February rules, 1876, the plaintiffs filed an amended bill, in which they allege that since the filing of their original bill they have discovered certain paper writings entered into between said J. F. W. Holt and the said Mathew Holt, bearing date the 25th day of January, 1859, and the 13th day of May, 1857, which writings are fully set forth in said amended bill.

By the first named, it is recited that said partnership, under the name and style of M. & J. F. W. Holt, existed between said parties since the year 1839 or 1840. That, in the commencement of the partnership, M. Holt contributed the sum of two thousand five hundred and thirty eight dollars and fifty seven cents in cash and bonds ;—that the said J. F. W. Holt contributed the sum of three thousand two hundred and thirty eight dollars and ninety seven cents embracing the farm at the mouth of Cedar creek, on which the said Holt then lived, and that the said partners had commenced a settlement, and that said J. F. W. Holt then held in his hands notes and bonds amounting to the sum of fifteen thousand six hundred and eighteen dollars and eighty cents and property amounting to the sum of one thousand one hundred and fifty dollars ;—that said notes and bonds were all recorded in a book, also the said property, and a

copy of the same furnished to said M. Holt, and that all the said notes, *etc.*, were to be accounted for in the final settlement of the said partnership; and that there were then in the hands of the said M. Holt notes and bonds amounting to the sum of six thousand and twenty dollars and forty three cents and constables' receipts for claims put out for collection, amounting to the sum of two thousand and ninety four dollars and ten cents, part of which had been collected and applied to the use of said firm (amount not known) the balance of which claims were to be accounted for in the final settlement of the partnership, and that there was also in the hands of said M. Holt property amounting to the sum of two hundred and sixty seven dollars which were all recorded in a book, and a copy furnished to J. F. W. Holt; —that said partners were to bear an equal part in relation to all debts against said firm, and all unsettled matters with lawyers and others, so far as the said firm were concerned, and in reference to all lands undivided, unappropriated, a former article of agreement was to remain in full force and virtue; and they agreed upon the following arrangement in relation to a part of the lands, *etc.*, belonging to· said firm :   J. F. W. Holt was to take the farm on which he then resided at the sum of four thousand five hundred dollars and the land lying on Leather bank, formerly owned by William Holber, deceased, in Ritchie county, at five hundred dollars and half of the farm, or their interest, purchased by V. Lake in Ritchie county, Va., at five hundred dollars and a tract of land lying on the Staunton and Parkersburg pike, near William Arnold's, or their interest in said tract, at five hundred dollars and also one house and lot in Weston, Lewis county, known as the "Lazell House," at five hundred dollars. M. Holt was to take the house and lot in Glenville, which he then occupied, at five hundred dollars, and the land on the waters of Cedar creek, purchased of J. M. Bennett and John G. Riddell, adjoining lands of O. P. Arnold, at eight hundred and fifty dollars and also the farm on Little Kanawha river, opposite Abraham Bush's, at one thousand two· hundred dollars ;—that the amount of land purchased by J. F. W. Holt was six thousand five hundred dollars, and the amount purchased

by M. Holt was two thousand five hundred and fifty dollars making a difference against J. F. W. Holt in purchase of three thousand nine hundred and fifty dollars in which amount J. F. W. Holt had executed his note to M. Holt for two thousand four hundred and fifty dollars interest from date;—that the balance one thousand five hundred dollars was to be paid to M. Holt in due bonds or notes belonging to the said firm—those most available—or, if any lands should be sold, belonging to the firm or to J. F. W. Holt, or houses and lots and cash realized from such sales, the said M. Holt was to have the benefits thereof, after the said debts of said firm were paid, or arrangements for the payment thereof.

It was further understood and agreed that the lands and houses purchased by said M. Holt and J. F. W. Holt were to be taken at their own risk, so far as title or incumbrance were concerned; that the amont which the members of said firm respectively contributed in the commencement of the partnership was that day settled. The excess in J. F. W. Holt's favor, of seven hundred dollars and forty cents, had been credited on his note.

It was further agreed and understood that in all lands that may have been purchased, entered, or acquired in any other way, in the name of either M. Holt or J. F. W. Holt, they should have an equal interest during the existence of of the partnership; —that J. F. W. Holt had executed his individual note for five or six hundred dollars to J. M. Bennett, and a note to G. D. Camden for the sum of three or four hundred dollars, and that M. Holt was to pay one half of said notes, as witness their hands and seals the 25th day of January, 1859. Which agreement was signed with the names of Mathew Holt and J. F. W. Holt, with the word "Seal" and a scroll attached to each. Some years prior thereto a certain other instrument of writing was entered into between Mathew Holt and J. F. W. Holt, which was in the words and figures following:

"Whereas heretofore, to wit, in the year 1839, or '40, Mathew Holt and John F. W. Holt entered into partnership in selling goods, stock, and business in general—at the time said partnership was formed, the said Mathew Holt

contributed in cash twenty — hundred dollars, and the said John F. W. Holt contributed his farm at the mouth of Cedar creek, on which he then resided, at the price of two thousand — dollars, and claims to the amount of —— dollars, since which time the said partners have continued in partnership, as well as all choses in action, personal property, and real estate, however purchased or acquired, and are to remain in partnership until the same is formally dissolved, and all property acquired since said partnership commenced are and is considered as partnership property, whether the same be real or personal; each party participating in profits and losses."

The above agreement was dated the 13th day of February, 1857, and was signed and sealed by said J. F. W. Holt and Mathew Holt. The amended bill further alleges, that the said M. Holt and said J. F. W. Holt were for years partners in business, and to said partnership the said instruments in writing related; that the matters embraced in said agreements were material, and proper to be considered, adjusted and adjudicated in this controversy; and ask that perfect and complete statement and disclosures on the part of said J. F. W. Holt be sworn to, returned, and made by the said J. F. W. Holt, so that the plaintiffs, some of whom were infants at the time of the death of their said father, and others, of whom, to wit, the daughters aforesaid, except the wife of the said Hughes, were then unmarried, might be personally and legally satisfied that complete and full justice had been done or provided and enforced by decree touching the matters set out in said agreement, and the settlements and discoveries sought in this suit.

And the plaintiffs charged that the said John W. F. Holt had taken and acknowledged the receipt of a large amount of the personal assets of the said late firm of M. & J. F. W. Holt, with which and on account of which, he was chargeable, as well for actual collections as for his failure to use proper diligence in collection thereof, and in excess of the amount then or at any other time held, taken, or received by the said Mathew Holt.

And they further alleged that the terms of the writings and agreements aforesaid were not specifically known to all

of the plaintiffs at the time of the filing of the original bill in said cause; and they charge that there were divers and many tracts of land within Gilmer and adjoining counties which were owned by said late firm of M. & J. F. W. Holt, and which were held by said late firm or by the defendant John F. W. Holt, according to the said agreements, for the mutual benefit of said late firm of M. & J. F. W. Holt, or, in other words, to wit, for himself and the said Mathew Holt, and, since the death of said Mathew Holt, for himself and the heirs of the said Mathew Holt;—and that this the plaintiffs charge, is true, not only with reference to the land, but to many notes and bonds and claims held in the individual name of the defendant J. F. W. Holt; and the plaintiffs in that regard, and touching all the matters aforesaid call upon the said J. F. W. Holt to make discovery, and return a true list, not only of all such notes, claims, and bonds, but also of all such lands.

And the plaintiffs further charge that the defendant John F. W. Holt, since the entering into said writing bearing date the 25th day of January, 1859, which, of itself, and together with other articles between said M. Holt and J. F. W. Holt, shows the nature of the partnership and the rights of each partner, has acquired, in his individual name, many notes for large sums of money, and the legal title to many tracts of land, and the equitable right to and in a large amount of real estate, on account of contracts with said late firm, or for the benefit of said late firm, existing prior to the said 25th day of January, 1859;—that plaintiffs were unable to specify the same, and call upon the defendant for a discovery thereof, and that he make answer, and file a full and perfect list of the matters, notes, claims bonds, and real estate aforesaid, touching which a discovery and information was therein asked of the said defendant.

And the plaintiffs call upon the defendant for a discovery touching every subject, allegation and stipulation of the agreements and writings therein referred to and set out, and that the defendant do answer and explain every part and subject thereof, and, according to the agreement of the 25th day of January, 1859, that he do return a list of the notes and bonds that are by said agreement shown to

have been left in his hands, and that he do accompany the
same with the notes and bonds remaining uncollected, and
further show what notes, bonds, claims, or demands were
held by him, by assignment or otherwise, on the 25th day
of January, 1859, or that were thereafter taken, procured,
or acquired by him, in his own name or otherwise, on ac-
count of any matters touching the said partnership of him
and the said Mathew Holt, and that a like discovery and
list of the same, and the amount of the same, that has been
by him collected or by him made, relative to the real estate
owned by said firm on the 25th day of January, 1859, or
that was thereafter acquired by him, either in his own name
or in the name of the said late firm, or in any other name,
or otherwise controlled or owned by said late firm or indi-
vidually held, controlled, and owned, and the disposi-
tion there made by him.

Plaintiffs further charged that considerable real estate
legally and equitably owned and held by said late firm of
M. & J. F. W. Holt, and which was in like manner held
by said J. F. W. Holt, had since the said 25th day of Janu-
ary, 1859, and also since the death of the said Mathew
Holt, been sold by the said J. F. W. Holt, and in some in-
stances conveyances had been made, and in other instances
title bonds had by him been made and executed, to pur-
chasers of such real estate.

The plaintiffs denied the authority, as a matter of law,
on the part of said J. F. W. Holt, to make any such sale
or sales of any such land. Plaintiffs, however, alleged their
willingness to recognize and hold valid any sale of any such
real estate made and consummated during the lifetime of
said Mathew Holt, provided, in this case, the said John F.
W. Holt can be called upon and required to make return
thereof, and account therefor, by payment of the amount
of any such sale or sales to the plaintiffs, heirs of the said
Mathew Holt, or, if any such were made for the benefit of
the creditors of said firm, and the proceeds actually ap-
plied by said J. F. W. Holt or said Mathew Holt, now de-
ceased, to any such creditors other than the plaintiffs, they
deeming it but just and equitable, do not, in that event,
propose to controvert any such sale or sales that may have

been made prior to the death of said Mathew. Holt, but call upon the defendant to discover and show what lands were so sold or disposed of by him between the 25th day of January, 1859, and the death of said Mathew Holt, which occurred about the 2d day of October, 1866, and at what price, the date of such sale, the amount of each, the number of acres in each tract sold, and how much of the purchase-money has by him been collected. As to the real estate so sold and disposed of by the defendant since the death of said Mathew Holt, the plaintiffs deny his authority to do so, and call upon the defendant for a descriptive list thereof, and to discover to whom he has pretended to make such sales, the number of acres sold to each person, where situated, how held, and the price at which he made each and all such sales; and they ask that all of said lands that remain unsold and which were sold by said J. F. W. Holt without authority be partitioned according to the right in every tract.

The plaintiffs show that the defendant Holt is not only the surviving partner of himself and said Mathew Holt, and is entitled to enforce the obligations of the firm, but is administrator, entitled to receive the funds arising therefrom, and all debts due said estate of said M. Holt, deceased.

The plaintiffs therefore ask and pray for a settlement of the administration accounts, involving the money which he, as surviving partner, should pay the personal representative of M. Holt, deceased, and his personal notes and indebtedness, which he should in like manner pay;—that the relief prayed for in the original bill be granted;—that the the real estate belonging to the firm, or held in trust for, or otherwise owned and held for, the firm, which is unappropriated or undivided in said article of agreement of the 25th day of January, 1859, be partitioned between the present owners; and also that the personal estate of the plaintiff's deceased father may be distributed, and for such other relief as the court may see fit to grant.

On the 14th day of March, 1874, it was decreed that this cause be referred to one of the commissioners of said court to state the partnership accounts between the defendant

and M. Holt, deceased, and settle the administration accounts of the defendant on the estate of M. Holt, deceased, and that said commissioner report such special matter as he might deem pertinent, or, being pertinent, might be required by any of the parties, with leave to examine any of the parties upon proper interrogatories.

On the 20th day of September, 1877, a decree was entered in said cause, admitting Abigail C. Holt, widow of M. Holt, deceased, as defendant in the suit, with leave to file a copy of the will of her late husband, and the cause was heard upon the papers theretofore read and orders entered, and upon the amended bill of plaintiffs, upon the report of Commissioner N. M. Bennett, to which exceptions had been filed by the defendant, and upon depositions of witnesses; and the court not then deeming it necessary to pass upon the exceptions in detail, and being of opinion, from the proofs filed, that said report should be recommitted, the same was recommitted, to Milton Norris, a commissioner of the court, to make further report upon the matters theretofore referred to the commissioner; and he was directed to make a statement charging the defendant J. F. W. Holt with all moneys received by him out of the social effects and property of M. & J. F. W. Holt since the 25th day of January, 1859, and if, in such statement, the said J. F. W. Holt should be charged with the item of fifteen thousand six hundred and sixteen dollars and eighty cents specified in the writing dated the 25th of January, 1859, between said Holts, then the said commissioner should include in such statement, to the credit of J. F. W. Holt, all insolvent or uncollectible assets which belong to said firm, shown to be in his possession, and not derived by him by reason of his being the administrator of Mathew Holt, deceased, nor any which may have been received by him of the part of such assets received by Mathew Holt on the 25th day of January, 1859, but, if charged with said sum of fifteen thousand six hundred and sixteen dollars and eighty cents, then nothing which may have constituted a part thereof, collected by said J. F. W. Holt, should be charged against him; and the said commissioner was directed to strike a balance after the application of the process here indicated, and then to continue such state-

ments by allowing the said J. F. W. Holt credits for any proper payment or disbursements of funds in his hands as such partner; and the said commissioner was directed to make a statement as to the charges and credits with Mathew Holt upon like principles; and the said commissioner was directed to audit, state, settle, and report the administration accounts of J. F. W. Holt as administrator *de bonis non* with the will annexed of Mathew Holt, deceased, excluding therefrom any debt or property bequeathed by the will of Mathew Holt to the defendant Abigail C. Holt; next, that he open and state an account between the said J. F. W. Holt and the defendant Abigail C. Holt, charging the said J. F. W. Holt with any debts or property owing from the said J. F. W. Holt, as the individual debtor of Mathew Holt, by reason of his bonds or other debts so bequeathed, which may have come into the hands of the said J. F. W. Holt as such administrator, and the account between him and her should be stated upon the rule applicable in case of debtor and creditor; "and the said commissioner might report any account of the matters here referred according to the pretensions of either of the parties hereto, if so required by them."

Said commissioner was further required to ascertain and report a description of all real estate belonging to said firm of M. & J. F. W. Holt, and which, by the agreement and terms of the partnership, was firm property on the 25th day of January, 1859, and also to report what became of said real estate, what portion thereof remains unsold, what portion thereof was sold prior to the death of Mathew Holt, and by whom, and to whom, and what portion thereof, if any, has been sold by J. F. W. Holt since the death of said Mathew Holt, and to whom; also the purchase-money received or contracted for all such real estate, and who received such purchase-money, and, if any remains uncollected, from whom it is due; also what conveyances, if any, have been made to the purchasers of said real estate, and, if any such purchasers have not received deeds in pursuance of their purchases, who they are, and the nature of their contracts.

And said commissioner was empowered to require J. F.

W. Holt, or any party to this suit, to produce and file with him any and all deeds, title bonds, or other contracts in writing, in his or their possession, pertaining to such lands, including all notes, bonds, or other evidence of debt; and he was directed to report any matter or statement deemed pertinent by him; and leave was given said commissioner to take proof touching the subjects so referred to him, and to any party to propound to any other party interrogatories to be answered under oath.

On the 29th day of September, 1879, said Abigail C. Holt filed her answer to plaintiffs' bill, setting forth what she claimed to be entitled to under the will of Mathew Holt, deceased, what amounts had been paid her, and by whom;—that she still remained the widow of said Mathew Holt, never having married;—that one claim of one hundred dollars, against S. G. McCutchon and William M. Kincaid, which was devised to her, had been collected by Mathew Holt shortly before his death;—that about the 3rd of February, 1871, on the demand of J. F. W. Holt, she had executed to him a receipt for one hundred and twenty nine dollars and forty four cents as a credit on either the Varner debt or the judgment of *Webb* v. *Stout*, devised to her by said will, the amount of which receipt was never in fact paid to her;—that said receipt was given by her, upon the demand of said J. F. W. Holt, on account of a debt against the estate of said M. Holt claimed to have been paid by said J. F. W. Holt to R. F. Fleming, commissioner in the chancery cause of *Stump & Irwin* v. *Isaac Arnolds, Adm'r, etc.*, and that she was informed that lately said J. F. W. Holt claimed the benefit of both the receipt of said Commissioner Fleming and the receipt for the same money as against respondent, when in fact respondent had never received one farthing on account of said receipt.

She also sets forth in her answer certain claims which, under said will, she is entitled to, and which should be paid, that J. F. W. Holt, as administrator, should be required to pay her, as such devisee; and she also filed with her said answer a certified copy of an answer which was filed by said J. F. W. Holt, adm'r, *etc.*, in a chancery suit in which James Webb was plaintiff, in which said J. F. W.

Holt, as such administrator, admitted that there were no debts due from the estate of Mathew Holt, deceased, and that there could be no impropriety in decreeing a certain sum directly to his devisees.

I have thought proper to state this much of the pleadings, and of the directions given in the orders of reference, in order that the nature and character of the accounts required of the commissioner may be understood.

On the 15th day of March, 1880, R. F. Fleming, special commissioner, returned and filed his report, on which one hundred and two exceptions were endorsed by counsel for defendant J. F. W. Holt, a large number of which were sustained by the court, and a portion thereof overruled; and, said R. F. Fleming declining to act further as commissioner, the case was referred to G. D. Camden, Jr., who was appointed special commissioner for the purpose with directions to report upon the matters before directed to be reported upon; and in making said report to conform to the principles laid down in the rulings of the court upon said exceptions, and should said Camden decline or fail to act as commissioner, the judge, in vacation, was authorized to appoint a commissioner in Camden's place, without any notice to the parties.

Special Commissioner Fleming does not return with his report the evidence upon which the same was predicated; and although he certifies that he retained the same in his office for ten days for exception, the exceptions, numbering one hundred and two were not filed for more than three months, and all of these exceptions refer to questions of fact, on which the correctness or incorrectness of items in said account depend.

W. H. Byrne having been directed to take said account, and declining to do so, on the 8th day of October, 1881, an order was entered, reciting the fact that said Byrne had failed to execute said order of reference; and by consent of parties R. J. Simpson was appointed a special commissioner, in lieu of said Byrne, and directed to execute said order of reference.

On the 12th day of June, 1882, said R. J. Simpson returned his report, which does not appear to have been ex-

cepted to during the time it was retained in his office, which he certifies was for ten days, but subsequently the same was excepted to by the attorney for J. B. Varner, and one hundred and sixty exceptions were indorsed thereon by the attorneys for J. F. W. Holt.

In the report made by Special Commissioner Simpson, he says: "I have adhered to the form of R. F. Fleming's report as much as possible, and now refer to that very elaborate report for the detail of the statements herein made. I have adopted the several statements of charges and credits of Mr. Fleming's report, with their respective numbers and letters, making such changes and modifications therein as were required by the rulings of the court and the facts in the case," *etc.* He also certifies that he retained said report in his office for ten days after its completion, for the inspection of all persons interested therein, but he does not return with his report the evidence which was before him, on which his report was based; and said report does not appear to have been excepted to within the said ten days, although numerous exceptions were subsequently indorsed, as to items thereof which were claimed as erroneous, depending on questions of fact.

This Court, in the case of *Chapman* v. *McMillan*, 27 W. Va. 220, held that, "where the report of a commissioner is not excepted to while it remains in his office, and before it has been returned into court, the evidence which was before the commissioner, on which he acted in making his report, is no part of such report, unless made so by the order of the court or by the report itself;" and "where no exceptions have been filed to the report of a commissioner, while it remained in his office, and before he returned the same into court, it is not the duty of the commissioner, unless required by the court to do so, to return with his report the evidence which was before him, on which he acted in making his report; and, if a party afterwards excepts thereto, the court in considering such exceptions will only regard such errors as appear upon the face of the report;" and "where the report of a commissioner, which has not been excepted to before the same was returned into court, is afterwards excepted to, and the evidence which was before

the commissioner, on which he acted, has not been returned as part of such report, such exceptions will be regarded as made for errors appearing upon the face of the report; and in such case the same can not be impeached on grounds or in regard to matters which may be affected by extraneous evidence." See, also, case of *Arnold* v. *Slaughter*, 36 W. Va. 589 (15 S. E. Rep. 250) and authorities therein cited (decided in April, 1892).

In accordance, then, with this ruling neither the court below nor this Court would be allowed to look into the evidence produced before the commissioner, in determining whether the exceptions indorsed upon said report were well taken or not; and, as they depend upon the facts proven before the commissioners, this Court is unable to say whether the findings of the commissioners were supported by the evidence or not, and we must hold that the Circuit Court acted properly in overruling said exceptions.

On the 8th day of February, 1884, an order was entered in said cause, referring the same to M. H. Stump, one of the commissioners of the court, to take proof and report the debts, if any, due from and owing by said J. F. W. Holt, then deceased, and the estate, real and personal, liable to be subjected to the payment of such debts, where such real estate is situate, and whether such real estate, or any part or parcel thereof, was delinquent or sold for nonpayment of taxes thereon, and, if so, the facts touching such delinquency or sale, stating the debts aforesaid in the order of their priorities, the amount of each thereof, and to whom payable, together with the real estate owned by said J. F. W. Holt at the time of his death, or otherwise liable to be sold to satisfy any such debt or debts, with the state and condition of the title of any such real estate, and the annual rental value of the same, and that he also state an account of the administration of John M. Holt, administrator of J. F. W. Holt, deceased, and also of the administration account of Hugh McQuain, sheriff of Gilmer county, and, as such, administrator *de bonis non* of the estate of Mathew Holt, deceased, with his will annexed.

Under this order of reference the said M. H. Stump gave notice that he would open said account on the 5th day of

May, 1884, as he states in his report, by publishing and posting as therein stated; but the statement therein made is the only evidence that appears in the record that such notice was published or posted. And he says in said report that the execution of said order was adjourned from day to day, and from time to time, until the 26th day of November, 1887—three years and a half; but no record appears of said adjournment.

The said Commissioner Stump also says that said Abigail C. Holt having departed this life, and her last will having been proven, and said suit revived against her administrator and devisees, thereupon, on the 4th day of January, 1888, her administrator with the will annexed, and Laura A. Doyle and Margaret Holt, devisees of said Abigail Holt, appeared by counsel before him, and waived other or further notice of said reference, and asked that the same proceed in all respects as if they had been regularly served with notice.

But when we refer to the record we find that the bill of revivor, for the purpose of reviving said suit in the name of the administrator and heirs at law of Abigail Holt, was not filed until January rules, 1888; and no order appears to have been entered, reviving said cause in the name of said administrator and devisees.

Again, it appears that nearly all of the depositions which are returned with the report of said M. H. Stump, commissioner, were taken after the death of said Abigail Holt, and before the suit was revived against her devisees and administrator, and, when said depositions are examined, they do not authorize the finding of the commissioner; and the report is excepted to because of the insufficiency of the evidence.

Said report is also excepted to because the item of fifteen thousand five hundred and nine dollars and twenty eight cents is inaccurately taken from the previous report of R. J. Simpson, commissioner, and the same is incorrectly reported as an item against J. F. W. Holt as administrator, and not as surviving partner. The amount found in said Simpson's report, due from J. F. W. Holt as surviving partner, was for thirteen thousand four hundred and seven dol-

lars and fifty one cents; and the same, as well as the principal sum of fifteen thousand five hundred and nine dollars and twenty eight cents are excepted to because the same are made up from said Simpson's report of divers and numerous items of charges, and for omission of said report to give credit to J. F. W. Holt, which matters are excepted to by exceptions indorsed on said report, and which exceptions are relied upon; and we can not pass upon the correctness of said items, in the absence of the evidence.

Now, while it is true that section 8 of chapter 129 of the Code, speaking of the duty of commissioners, provides that "he shall not copy in his account or report any paper; and, if there has been a previous account, he shall not copy it into his report, but, taking it as the basis of his, correct the errors, and supply the defects thereof by an additional statement"—instead of this, said commissioner takes the first item of his account, to wit, a charge of fifteen thousand five hundred and nine dollars and twenty eight cents against John F. W. Holt, as late sheriff of Gilmer county, and as such administrator of the estate of Mathew Holt deceased, from the report of R. J. Simpson, which is excepted to by J. S. Withers, attorney for J. B. Varner, and by J. F. W. Holt, and has never been properly acted on or confirmed.

The order of reference to said M. H. Stump appears to have been thought proper, on account of the death of J. F. W. Holt, and, among other things, he was directed "to take proof of, and state and report, the debts, if any, due from and owing by the said J. F. W. Holt, then deceased;" and in attempting to comply with this requirement, he takes from the report of Commissioner Simpson the item of fifteen thousand five hundred and nine dollars and twenty eight cents against J. F. W. Holt, as late sheriff and administrator, as proof sufficient on which to base his report. But, when we refer to the report of said Simpson, a mistake of one hundred dollars is apparent in the addition of the last three items, and, by reference to Statement C. of said report, it will be seen that thirteen thousand four hundred and seven dollars and fifty one cents of that amount is

found by said Simpson due as surviving partner, and is charged up to his administration account, when it is apparent that the liability of said J. F. W. Holt as administrator, and the liability resting upon his sureties as such, may be very different from his liability as surviving partner; and yet said commissioner carried said amount of fifteen thousand five hundred and nine dollars and twenty eight cents into his account, and stated it as a charge satisfactorily proven against John F. W. Holt as late sheriff, and, as such, administrator of the estate of Mathew Holt, deceased, and added interest, making the total amount twenty thousand seven hundred and eighty two dollars and forty three cents.

He further reports that, out of the debt of twenty thousond seven hundred and eighty two dollars and forty three cents there should be paid to Laura A. Doyle and Margaret Holt, as devisees of Abigail C. Holt, deceased three thousand three hundred and forty three dollars and seventy five cents with interest on one thousand five hundred dollars principal from 20th September, 1879, being the amount shown by statement No. 10 of the report of Commissioner Fleming, and also the further sum of two thousand one hundred and sixty one dollars with interest on one thousand and ninety five dollars and ninety two cents principal from 20th September, 1879, being amount No. 15, same commissioner's report which report also stands excepted to and unconfirmed; and yet the items are reported without additional proof, and treated as correct.

Several of the findings of said Commissioner Stump's report are unsupported by the depositions returned with his report; and as it is manifest that the greater portion of the large sum of twenty thousand seven hundred and eighty two dollars and forty three cents reported by him as due from John F. W. Holt as administrator of the estate of Mathew Holt, if correctly reported as to amount, should have been so reported, as against him, as surviving partner, involving settlements and transactions which occurred during the lifetime of said partners, and long before he became administrator, the exception endorsed on said report as to that item, and as to other items taken from Commis-

sioner Fleming's report, should have been sustained; and for the reason that the evidence returned with said commissioner's report does not support its findings, the said report should have been recommitted.

It requires no argument to show the necessity on the part of the commissioner of returning the notice under which he acted, and the evidence of its execution, with his report, in order that the court may judge of the fact as to whether the parties entitled thereto have had the proper notice. In the decree complained of, however, the Circuit Court, on the 7th day of October, 1889, decreed that the several exceptions to the report of R. J. Simpson and M. H. Stump be overruled; and said reports were approved and confirmed, except as modified by said decree, and the administrator of J. F. W. Holt, deceased, was directed to pay to Thomas B. Hughes and Louisa, his wife, W. T. Wiant, administrator of the estate of Rebecca E. Wiant, deceased, Laura A. Doyle, Mathew S. Holt, and Charles B. Holt nineteen thousand two hundred and sixteen dollars and thirty one cents, with interest thereon from the 1st day of October, 1889, making the sureties of said J. F. W. Holt, as sheriff, and, as such, administrator *de bonis non* of Mathew Holt, deceased, liable for fourteen thousand three hundred and seventy dollars and twenty six cents part thereof. Said decree proceeds to state how the conclusions of the court were arrived at, and how and to whom the money decreed must be paid; but, for the reasons before stated, said decree must be reversed, and the cause remanded, with costs to appellants.

REVERSED. REMANDED.