# CHARLESTON.

## Holt *et al. v.* Holt *et al.*

### Submitted June 18, 1898—Decided March 22, 1899.

1.  Equity Practice—*Commissioner's Report.*

    When the principal defendant in a chancery cause dies, and the same is revived against his administrator, heirs, sureties, creditors, grantees, and donees, and converted into a general creditor's bill for the purpose of settling the estate of such decedent, an unconfirmed commissioners report, to which numerous exceptions have been filed, cannot be confirmed against the objection of any of such new and interested parties to the suit, but the same should be recommitted anew without regard to such unconfirmed report. (p. 403).

2.  Commissioner in Chancery—*Reports—Confirmation.*

    When the circuit court, directly contrary to law and the instructions of this court, passes on the exceptions to such nonconfirmable report, the commissioner to whom a general recommittal of the cause is had is justified in disregarding such plainly erroneous action of the circuit court. Such an order of confirmation is interlocutory, and non-appealable, as it does not settle all the principles of the cause. (p. 407).

3.  Equity Practice—*Commissioner's Report.*

    When a circuit court wholly disregards a commissioner's report, and numerous exceptions thereto, and enters a decree on an entirely different basis from that presented in such report, and this court, on an appeal, reverses such decree, it will remand the cause to the circuit court, with directions to pass upon and dispose of such exceptions *seriatim* and either to reform or recommit such report. (p. 409).

4.  Partnership—*Dissolution.*

    On the dissolution of a partnership the parties enter into a written compact partly settling the partnership affairs, and fixing a basis for future settlement. In the absence of fraud or mistake, such contract cannot be disregarded by a court of equity, and such future settlement made on a different basis, at the instance of those claiming under a deceased partner. (p. 406).

5.  Commissioner in Chancery—*Report—Acceptance.*

    In passing on exceptions to a commissioner's report involving the settlement of an administration account, the circuit court

should not permit one of the parties to the suit, with or without notice to the administrator, to make up and file an elaborate statement of such administration account entirely at variance with the commissioner's report, and found its decree on such statement against such administrator. But, if numerous exceptions are sustained to such report, the same should be recommitted to the commissioner, to be reformed in accordance with the rulings of the court. (p. 407.)

6. ADMINISTRATOR—*Appraisement Bill.*

An administrator should not be charged with notes and accounts appearing in an appraisement bill, but with only such as he has collected or lost by negligence or misconduct. His account under oath is *prima facie* evidence in his favor. *Hooper* v. *Hooper*, 32 W. Va. 541, (9 S. E. 937.) (p. 409).

Appeal from Circuit Court, Gilmer County:

Suit by M. S. Holt and others against John M. Holt, administrator of J. F. W. Holt, and others, to compel defendant Holt to settle the administration accounts of J. F. W. Holt formerly administrator of M. Holt, and to account for moneys arising from accounts paid and lands sold and belonging to the partnership previously existing between M. and J. F. W. Holt. Decree for plaintiffs, and defendants appeal.

*Reversed.*

R. F. KIDD, A. L. HALL, and CASTO & FLEMING, for appellants.

R. G. LINN and N. M. BENNETT, for appellees.

DENT, JUDGE:

This case was here before, and the facts are exhaustively and elaborately stated in the laborious and lucid opinion of JUDGE ENGLISH found in 37 W. Va. 305, (16 S. E. 675). They will, therefore, not be repeated here, except in so far as may be necessary to a proper determination of the question now presented. On the first Monday in August, 1873, the heirs and devisees of Mathew Holt, deceased, in the circuit court of Gilmer County, filed their bill of complaints against J. F. W. Holt, as sheriff of Gilmer County, administrator *de bonis non* with the will annexed of the personal estate of the said Mathew Holt, deceased, and surviving partner of the late firm, composed of himself and decedent, praying a settlement of his accounts in both capacities. The defendant answered, claiming that he was

not indebted in either capacity, but that on a fair settlement decedent was indebted to him. The cause was referred to a commissioner. The commissioner reported, and exceptions were taken thereto, but the report does not appear in the record. On the first Monday in February,, 1876, the plaintiffs filed an amended bill, exhibiting as part thereof a written contract between Mathew Holt and J. F. W. Holt, bearing date the 25th day of January, 1859, showing a dissolution and partial settlement of the partnership, and, in addition to their former prayer, asked for partition of the partnership lands. On the 20th day of September, 1877, the cause was recommitted to Milton Norris, with certain directions as to the settlement of the partnership. Commissioner Norris failing to act, R. F. Fleming, on the 15th day of March, 1878, was substituted. He returned his report, and numerous exceptions were taken thereto, and on the 15th day of March, 1880, many of such exceptions were sustained, and the case was recommitted to G. D. Camden, Jr. On the first Monday in October, 1880, the plaintiff filed an amended bill, which made the sureties of J. F. W. Holt, on his sheriffalty bond parties defendant, and suggested a devastavit, and G. D. Camden, Jr., and W. H. Byrne substituted for him, both refusing to act, R. J. Simpson was appointed commissioner on the 3rd day of October, 1881. On the 12th day of June, 1882, he completed and returned his report. On the 15th day of June, 1882, J. B. Varner, one of the sureties, filed exceptions to said report, and on the 22d day of September, 1882, the attorneys for J. F. W. Holt filed one hundred and sixty elaborate exceptions thereto. On the first Monday in November, 1883, plaintiff filed a bill of revivor and supplemental bill against the administrator, heirs at law, sureties on his sheriff's bond, and creditors of J. F. W. Holt, deceased, for the purpose of ascertaining the property and debts of said decedent, and setting aside various transfers of both real and personal property claimed to be in fraud of plaintiff's demands, and for general relief. On the 7th of February, 1884, John M. Holt, in his own right and as administrator of J. F. W. Holt, deceased, was permitted to file his answer, and also the exceptions to the Simpson report filed with the clerk. On the 8th day of February, 1884, without acting on the Simpson report, or any of the exceptions thereto, the court entered a general reference of the cause

to M. H. Stump, one of its commissioners, "to state and report the debts, if any, due from and owing by said J. F. W. Holt, now deceased, and the estate, real and personal, liable to be subjected to the payment of such debts." Also to settle the administration accounts of John M. Holt, administrator of the said J. F. W. Holt, deceased; and the administration account of Hugh McQuinn, sheriff of Gilmer County, and, as such, administrator *de bonis non* of the estate of Mathew Holt, deceased, with the will annexed. Commissioner Stump executed this order of reference, and returned his report, to which numerous exceptions were taken. His report was based principally on the report of R. J. Simpson. On the 7th day of October, 1889, the court entered a decree overruling the exceptions to both the report of R. J. Simpson and H. M. Stump, approved the reports, and granted the plaintiffs the full relief sought by them. From this decree an appeal was taken to this Court, which resulted in the reversal thereof, and the case was remanded for further proceedings. On the 6th day of June, 1893, the circuit court, failing to comprehend the action of this Court, proceeded to amend, approve, and confirm the report of R. J. Simpson, and then entered a general order of reference to Joe N. Craddock, similar to the one directed to M. H. Stump; Stump's report being entirely disregarded. Before the reference was entered, John M. Holt, administrator of J. F. W. Holt, moved the court to recommit the report of Commissioner Simpson, with directions to the commissioner to execute the order of reference entered in this cause at the fall term, 1877, of this Court, and also to strike out certain items of account connected with and being a part of the Simpson report, which motions the court overruled. On the 10th day of January, 1896, Commissioner Craddock filed his report. Numerous exceptions were taken thereto by both plaintiffs and defendants. The court, ignoring said report, and the exceptions thereto, except as overruled or disposed of by the result of the decree entered, proceeded to enter substantially the same decree, with some addition thereto, formerly reversed by this Court. From this the same parties again appeal, relying substantially on the same errors. The first manifest, though nonappealable, error committed by the circuit court was in disregarding the decision of this Court amending, approving, and confirming the report of R. J.

Simpson over the objection of the administrator, heirs, and creditors of J. F. W. Holt, deceased. This arose from an entire misconception of the able and lucid opinion of Judge English, owing to a too hasty consideration thereof. He correctly lays down the law as it heretofore existed,—that exceptions to a commissioner's report relating to matters dependent on the evidence must be taken while the report is in the commissioner's office, so that the question of fact involved may be brought to his attention for examination and remarks, and the return of the evidence affecting the same; otherwise, the court will consider all such questions waived. By reason whereof he further held that this Court could not "pass on the correctness of said items in the absence of the evidence," meaning thereby that this Court was powerless to examine the questions raised, either for the purpose of confirming or rejecting the report of R. J. Simpson; and the same rule applied to the circuit court. He further says that the "circuit court acted properly in overruling said exceptions." But he stops short, and does not say that it acted properly in confirming and approving such report, which inferentially says that its action in so doing was erroneous. He does not leave this to mere implication, knowing that it might be misleading, but, to place the matter beyond quibble, he says: "Said commissioner takes the first item of his own account, to wit, a charge of fifteen thousand five hundred and nine dollars and twenty-eight cents against John F. W. Holt, as late sheriff of Gilmer County, and, as such, administrator of the estate of Mathew Holt, deceased, from the report of R. J. Simpson, which is excepted to by J. S. Withers, attorney for J. B. Varnor, and by J. F. W. Holt, and has never been properly acted on or confirmed." That is to say, that the action of the circuit court in overruling such exception and confirming such report was improper, and erroneous. He again, to render the matter more emphatic, repeats it more at length, and, in effect, holds that the report of R. J. Simpson, never having been properly confirmed by the court prior to the death of J. F. W. Holt, cannot be used as a conclusive establishment of plaintiffs' claim against the administrator, heirs, and creditors of such deceased against their objection; nor that it is evidence of such claim, but that the same must be established against the decedent's estate, as though it were a claim originally pre-

sented. And in this the learned judge is plainly right. When the suit was originally instituted, its sole object was to settle the partnership accounts of J. F. W. and Mathew Holt. A reference was had to Commissioner Fleming for this purpose. His report was not confirmed, but was set aside on exceptions thereto, and the cause was recommitted to Commissioner Simpson. In the meantime the plaintiffs changed the character of the bill, and charged a devastavit, and brought the sureties on the sheriffalty bond before the court. Simpson made out and returned his report, strictly following Fleming's report, without any new evidence and disregarding numerous exceptions sustained by the court to Fleming's report. These exceptions were mainly repeated to the Simpson report. In the meantime, before any action is had by the court on the report or exceptions, J. F. W. Holt departs this life, and ceases by reason thereof to be an actor in the suit. The plaintiffs then changed the entire character of their suit by filing an amended and supplemental bill of revivor against the administrator, heirs, creditors, sureties, grantees, and donees of J. F. W. Holt, deceased, for the purpose of ascertaining the property, both real and personal, of the decedent, and the debts and liabilities against the same, with their priorities, and applying the assets, both real and personal, on such liabilities. The suit was thereby converted into a general creditors' suit, subject to all the principles and rules relating thereto. Without regard to the Simpson report, a general reference was had to a commissioner for the purposes of the suit. On such reference the plaintiffs' claim must be proven up the same as any other claim, and they could not rely for proof thereof on the disapproved report of Fleming, or the nonconfirmed report of Simpson, as neither of them had been ratified, nor rendered final and conclusive by any action of the court in proper time, and could not be so ratified and rendered conclusive, owing to the changed nature of the suit and the parties thereto, who had the right to object to such ratification. The plaintiff's claim was still in the condition of an open demand against which it was the duty of the administrator and the right and privilege of the heirs, sureties, creditors, grantees, and donees of the decedent to defend. *Woodyard* v. *Poseley,* 14 W. Va. 211; *Tavenner* v. *Barrett,* 21 W. Va. 656. In the case of *Brod-*

*erick* v. *Broderick*, 28 W. Va. 378, this Court held that "a judgment recovered in an action at law against an administrator or executor of the debt of his intestate or testator is not even *prima facie* evidence of the existence of such debt as a charge upon the lands of such decedent in the hands of his heirs or devisee." So, if the circuit court, before the heirs, creditors, and grantees of the decedent were made parties, had proceeded to act on the report of Commissioner Simpson, confirmed the same, and decreed against the administrator, such decree would not have been *prima facie* evidence of the existence of the debt against the lands of such decedent. And, if such is the case with a decree founded thereon, it is impossible to hold that an unconfirmed commissioner's report is *prima facie* evidence of such debt prior to the time such heirs, etc., are made parties to the suit, and, such commissioner's report not being *prima facie* evidence of such debt after such persons have been made parties to such suit, it is error for the court to confirm the same in face of their objection without recommittal thereof to afford them the opportunity of making defense against such debt. The provision of the law contained in section 8, chapter 129, Code, to wit: "If there has been a previous account, he shall not copy it into his report, but taking it as the basis of his, correct the errors and supply the defects thereof by an additional statement," was not intended to operate as a confirmation in any degree of the original report, but is a mere instruction to the commissioner in making up his new report to save time and expense.

After the death of the principal litigant to a suit, it would certainly be inequitable and oppressive to confirm a commissioner's report, made during his lifetime, without affording those whose property and rights will be adjudicated and affected thereby an opportunity to object to the same; and such opportunity can only be afforded in a proper way by a complete recommittal of the whole case or matter in dispute. This may occasion cost or delay, but justice should not be weighed in the balance with a money consideration. In the cause up until the death of J. F. W. Holt there had been entered no appealable or conclusive order, but the whole matter was in the breast and under the control of the court. At the time of the reference and report

of R. F. Fleming, there was only one defendant to the suit. The bill was then amended, charging a devastavit, and bringing in the sureties on his official bond. The sureties had the right to require that the cause be heard de novo. It is expressly provided in section 24, chapter 85, Code, that: "No personal representative or any surety of his shall be chargeable beyond the assets of the decedent by reason of any omission or mistake in pleading or false pleading of such representative. And in the action allowed by the preceding section the defendants may plead any pleas, and offer any evidence which would be admissible in an action against a personal representative suggesting a devastavit." The same rule applies in a court of equity. So the report of R. F. Fleming, founded on a wrong theory of this controversy, could have no binding or conclusive effect on the sureties subsequently impleaded in the suit. They had the right to demand that the court and commissioner should be governed by the pleadings in the cause, and that the *probata* should conform to the *allegata.*

In the first amended bill the plaintiffs set up and rely upon the following contract, which, because of its importance, is here copied in full: "We, M. Holt and J. F. W. Holt, have this day agreed upon the terms and statements hereinafter mentioned in relation to the partnership existing between us since the year 1839 or '40 under the name and style of M. and J. F. W. Holt. The said M. Holt in the commencement of the partnership contributed the sum of $2,538.37 in cash and bonds; the said J. F. W. Holt contributed the sum of $3,286.97, embracing the farm at the mouth of Cedar creek, on which the said Holt now lives. We, the said partners, M. Holt and J. F. W. Holt, have commenced a settlement, and J. F. W. Holt now holds in his hands notes and bonds amounting to the sum of $15,-616.80, and property amounting to the sum of $1,150.00, and the said notes and bonds are all recorded in a book, and also the said property, and a copy of the same furnished to the said M. Holt. Now, the said notes, etc., are all to be accounted for in the final settlement of the said partnership, and there is now in the hands of the said M. Holt notes and bonds amounting to the sum of $6,020.42, and constable's receipts for claims put out for collection,

amounting to the sum of $2,094.10, a part of which has been collected, and applied to the use of said firm (amount not known); the balance of the said claims are to be accounted for in the final settlement of the partnership; and there is also in the hands of the said M. Holt property amounting to the sum of $267.00, which are all recorded in a book, and a copy furnished to J. F. W. Holt. We, M. Holt and J. F. W. Holt, are to meet or bear an equal part in relation to all debts against the said firm, and all un-settled matters with Linn and others, so far as the said firm is concerned, and, in reference to all lands undivided and unappropriated, a former article remains in full force and virtue. We, M. Holt and J. F. W. Holt, have mutually agreed upon the following arrangement in relation to a part of the lands, etc., belonging to the said firm: J. F. W. Holt is to take the farm on which the said J. F. W. Holt now resides at the sum of $4,500.00, and the land lying on Leather Bark, formerly owned by William Holbert, deceased in Ritchie County, at $500.00, and half of the farm, (or our interest) purchased by V. Lake, in Ritchie County, Va., at $500.00, and a tract of land lying on the Staunton and Parkersburg pike near William Arnold's or one-half interest in the said tract, and also our —————— in a house and lot in Weston, Lewis County, Va., known as the 'Lazell House,' at $500. M. Holt is to take the house and lot in Glenville which he now occupies at $500.00, and the lands on the waters of Cedar creek purchased of J. M. Bennett and J. G. Riddell, adjoining the lands of C. P. Arnold at $850, and also the farm on the Little Kanawha river, opposite Abraham Rush's at $1,200. The amount of lands purchased by J. F. W. Holt is $6,500, and the amount purchased by M. Holt is $2,250, making a difference against J. F. W. Holt in purchase of $3,950, on which amount J. F. W. Holt has executed his note to M. Holt for $2,450, interest from date; the balance—$1,500—is to be paid to M. Holt in due bonds or notes belonging to the said firm,—those most available; or, if any land should be sold belonging to the firm, or to J. F. W. Holt (or house and lot), and the cash realized from such sales, the said M. Holt is to have the benefit thereof after the debts of the said firm are paid, or arrangements for the payment thereof, all errors in the calculation to be

corrected in the foregoing statement or moneys collected on notes or bonds not indorsed; and it is further understood and agreed that the land and houses purchased by us, M. Holt and J. F. W. Holt, we take at our own risk, so far as title or incumbrance are concerned. The amount which we, M. Holt, and J. F. W. Holt, contributed in the commencement of the partnership has this day been settled. The excess in J. F. W. Holt's favor of $700.40 has been credited on his note. And it is further agreed and understood that all lands that have been purchased, entered, or acquired in any other way in the name of either M. Holt or J. F. W. Holt, they shall have acquired interest (during the existence of the partnership). J. F. W. Holt has executed his individual note for five or six hundred dollars to J. M. Bennett and a note to G. D. Camden for the sum of three or four hundred dollars. M. Holt is to pay one-half of the said notes. Witness our hands and seals, this the 25th day of February, 1859. Mathew Holt (Seal.) J. F. W. Holt (Seal.)" By this contract the basis of all future settlements of the partnership was solemnly fixed and determined by the partners on the dissolution of their firm business when both were in life, and when the circuit court in its original order of reference authorized the commissioner in any particular to disregard it, it committed a grievous error, opening wide the floodgates of litigation, and allowing to pour forth a confused and muddy stream of doubtful parol evidence concerning matters that time and the contract both put to rest. At the same time the law closed the mouth of the defendant, while the fickle memory of man was ransacked for evidence of the slightest tending to prove a liability, however remote, against him. If Mathew Holt could have spoken from his grave he would have said: "Nay, nay, my children. For upward of a generation my brother was my trusted companion and faithful partner. Not during my whole life had I any reason to doubt the probity of all his business transactions, and the reflections of dishonesty that you would cast upon him must rest with equal effect upon yourselves. Let not your lust for gain blind your eyes to the obligation you owe to an upright ancestry, whose virtues, and not whose frailties, you should revere in your memories and perpetuate in your lives." Simpson's report was a mere repeti-

tion of Fleming's, and it was, therefore, open to the same objections. No appealable or final order having been entered in the cause, the court not only had the authority, but was in duty bound, when the nature of the suit was changed, owing to the death of the principal defendant, to refer the whole matter of litigation anew to Commissioner Stump, untrammeled by the former reports, and this, by its order, it did do. He, however, under a misunderstanding of the law, adopted the report of Simpson, which was founded on the erroneous report of Fleming, and thus continued the errors in the case, to the detriment of the administrator, heirs, creditors, sureties, grantees, and donees of the decedent. And for this reason JUDGE ENGLISH reversed the decree founded on such report, and remanded the case to be properly recommitted. The court did this, but before doing so it hampered the whole matter by an erroneous confirmation of the Simpson report. At the same time it directed the commissioner to ascertain the estate, both real and personal, of the decedent, and then debts, liabilities, and other priorities against the same. This placed Commissioner Craddock in a quandary. On the one hand, he had the decision of this Court plainly directing him not to take the Simpson report as a basis of the plaintiff's recovery against the estate of the decedent, but to ascertain the same correctly from the pleadings and proofs in agreement therewith, sustained by law, equity and justice. On the other hand, he had the erroneous, nonappealable, interlocutory orders of the circuit court, directing him to the contrary. *Hooper* v. *Hooper,* 29 W. Va. (283 1 S. E. 280); *Shieey* v. *Musgrave,* 29 W. Va. 131, (11 S. E. 914); *Hill* v. *Als,* 27 W. Va. 215; *Laidley* v. *Kline,* 21 W. Va. 21. He therefore chose the side of wisdom, followed the law, and made up his report with great labor from the pleadings and proofs. To this report the plaintiffs were allowed numerous exceptions, although they had a special statement made in their own behalf in accord with the Simpson report. The court wholly ignored Commissioner Craddick's report, and almost virtually entered its former decree, in conformity with the Simpson report. For this reason this cause must again be reversed, and the able opinion of JUDGE ENGLISH must be reasserted and approved as the law of this case. Commis-

sioner Craddock took as the basis of his report the contract of dissolution aforesaid, and this is the only true and proper basis on which the partnership can be settled. Whether he arrived at a correct result is not now properly before this court, as the circuit court wholly ignored his report, and has not yet passed on the numerous exceptions taken thereto, other than the one relating to the commissioner's charges for time employed. This was properly overruled, as the charges were authenticated in the manner provided by law, and there is nothing before the court to show they were excessive. The contract of dissolution could not be set aside except for fraud or mistake, and Mathew Holt lived for many years thereafter, strictly adhering thereto, and finding no fault therewith, and his heirs will not be heard to impeach the same now. Time has obliterated any fault that might have been found therewith, and it must be construed by itself. As it is written, so it must be read, and binds both parties and privies. *Forter* v. *Risin*, 17 Grat. 322.

The questions of fraud raised in the proceedings and determined by the court are so dependent on the amount the plaintiffs show themselves finally entitled to recover that it would be proper to pass upon them now, and it may hereafter prove unnecessary to do so. As to the account of the administrator, John M. Holt, the decree is in the following words, to wit: "And the court having sustained certain exceptions of the plaintiffs and of the defendants to the report of the settlement of the account of John M. Holt, administrator of the estate of J. F. W. Holt, deceased, the items of which appear upon a paper here filed, marked 'John M. Holt, administrator, October 1st, 1896,' and it appearing that there is due from the said John M. Holt, as such administrator, the sum of four thousand four hundred and ten dollars and sixty-six cents as of the 1st day of October, 1896," and this sum of four thousand four hundred and ten dollars and sixty-six cents is decreed against the administrator, while the commissioner's report shows due the administrator from the estate the sum of four thousand six hundred and ninety dollars and fifty cents, a material difference in some manner, not shown on the face of the decree, arrived at by the court. The decree fails to indicate which exceptions were sustained and which overruled,

and on this Court is thrown the burden of searching out the matter by the light of a paper marked "John M. Holt," and trying to adjust the difference between the commissioner and the court without the matter being properly presented on the face of the decree. On an examination of the paper filed, it seems to be simply a statement of the administration account made by the plaintiffs, and not by the court, and has no reference to any of the exceptions, either sustained or overruled. This manner of entering a decree is plainly erroneous. *Perkins* v. *Saunders*, 2 Hen. & M. 422; *McCarty* v. *Chalfant*, 14 W. Va. 559. The account made up against the administrator is composed of certain claims alleged to have been voluntarily transferred to him by his father, in fraud of plaintiffs' rights, during his lifetime; others that were entered in the appraisement bill, and not collected by him; and others that were barred by the statute of limitations, and disputed for other reasons. In settling such account the court's attention is directed to *Reitz* v. *Bennett*, 6 W. Va. 417; *Evans* v. *Schroyer*, 22 W. V. 581; *Cavendish* v. *Fleming*, 3 Munf. 198. The question of fraud, as heretofore held, will depend on the amount that plaintiffs show themselves entitled to recover. As to the other amounts, the court should pass upon the exceptions *seriatim* in its decree, as each one is equivalent to a separate suit for the amount involved, unless it sustains the exceptions by number, or some other plain indication thereof, and recommits the report to the commissioner to be reformed accordingly. It is not proper to permit either of the litigants without notice to file a supplemental and reformed report, and base a decree thereon. The court in this instance seems to have plainly ignored the report of the commissioner, and, while making it appear on the face of the decree that it had passed on the exception generally, it founds the same on a statement furnished by the plaintiffs without the knowledge of the defendants. This is undoubtedly an unjustifiable way to proceed in a case of this character. If the court was dissatisfied with the commissioner's report, it should have recommitted it, with instructions to the same or another commissioner. *Vanderwerker* v. *Railroad Co.* 44 W. Va. 229, (28 S. E. 829.)

For the foregoing reasons the interlocutory decrees of

the 3d day of February, 1893, and the 10th day of June, 1893, in as far so they pass upon and confirm the report of Commissioner R. J. Simpson, and the final decree of the 9th of October, 1896, are wholly set aside, reversed and annulled, and this cause is remanded to the circuit court with directions to pass on the exceptions to the report of Commissioner Craddock *seriatim*, and indicate in its decree which of such exceptions it overrules and which it sustains, and reform and confirm said report, and recommit it to the same or another commissioner, and to further proceed in the cause in accordance with this opinion and the rules and principles governing courts of equity.

*Reversed.*