# CHARLESTON.

RUHL *et al. v.* BERRY *et al.*

Submitted January 27, 1900—Decided April 7, 1900.

1. ASSIGNEE—*Liabilities—Creditors.*

     An assignee for the benefit of creditors ought not to be made personally liable for the notes, bonds, and accounts assigned when they become due, but only at the time when actually collected by him, except such notes, bonds, and accounts as are lost by his negligence or improper conduct. (p. 826).

2. COMMISSIONER'S REPORT—*Errors—Decree Reversed.*

     Although no exceptions are filed to a commissioner's report, and the report is confirmed, if the decree of confirma-

tion upon its face shows material error as to matter of law prejudicial to the appellant, for such error the decree should be reversed.   (p, 829).

Appeal from Circuit Court, Braxton County.

Bill by Rhul, Koblegard & Co. against L. J. Berry and others.   Decree 'for plaintiffs, and defendant, Berry, appeals.

*Reversed.*

W. E. HAYMOND, for appellant.

JOHN B. MORRISON, for appellees.

MCWHORTER, PRESIDENT:

On the 13th of March, 1894, W. E. Harris, Joel E. Berry and M. L. Morrison, merchants, trading as Harris & Berry, made an assignment to L. J. Berry, trustee, of all their goods, wares, and merchandise, of every kind and description, held and owned by them as a firm, and all notes, bonds, claims, or demands for money held by them as such firm, together with all their accounts and other property as such firm, and also all personal property owned by the individual members thereof, and also all the real estate to which they, or either of them, are entitled, seised of, or possess, for the benefit of their creditors, to be sold or disposed of by him at public or private sale, on such terms and conditions as he might deem best, and as soon as it could be done consistently with the best interests of the creditors, first selling the firm property, and collecting and applying to the liquidating of the debts of the firm such of their demands and claims as might readily be collected, and next, such real estate owned by them, or either of them, but that all the social assets that could be realized and collected should be collected and applied to the payment of the social debts, and the social assets to be exhausted before selling or disposing of the individual property, so that, if the social assets would pay the social debts, the individual property should remain unsold; and said trustee was to pay out of the proceeds, first, the "costs and expenses incident to the execution of the trust, including one hundred dollars a month to the trustee for his services, diligently employed, including the provisions

of this deed, the same being deemed reasonable," then to apply ratably to all the debts of the firm, without any distinction whatever, and the residue, if any, to the said Harris & Berry, according to their respective rights; which deed also constituted said L. J. Berry the attorney in fact of the vendors, with full power to demand, sue for, and receive all money, etc. At the March rules, 1897, Ruhl, Koblegard & Co., and seven other firms and creditors of said Harris & Berry, filed their bill in equity in the circuit court of Braxton County against said L. J. Berry, assignee of Harris & Berry, O. K. Sutton, W. E. Harris and P. C. Peterson, late partners as Sutton, Harris & Co., W. E. Harris, J. S. Berry and M. L. Morrison, late partners as Harris & Berry, and George W. Niswander, alleging that O. K. Sutton and W. E. Harris engaged in the mercantile business in the town of Sutton, in Braxton County, as Sutton & Harris, and so continued until the ——day of ———, 189—, when they sold one-third interest in their business to P. C. Peterson, and formed a new partnership as Sutton, Harris & Co., and, while said last-named firm continued in business, they purchased large amounts of goods, and became indebted to plaintiffs, in their respective names and firms, in large amounts of money; that about the 20th of January, 1894, defendant, Peterson, sold his interest in said business to defendant, J. S. Berry and M. L. Morrision, and on the 23d of January, 1894, defendant, Sutton, sold his interest therein to Berry and Morrison; that by said sale the said Berry and Morrison obtained all the interest whatever of said Sutton and Peterson therein, including all outstanding notes and accounts coming to said firm, and by said contracts of purchase said Berry and Morrison assumed the payment of all the indebtedness and liabilities of said firm of Sutton, Harris & Co., including all plaintiff's debts, respectively; that upon the consummation of said sales of Peterson and Sutton, respectively, to Berry and Morrison, said firm assumed the name of Harris & Berry, and continued to do business at same place and in same manner, purchasing goods of plaintiffs, and becoming further indebted to them, respectively, until March 13, 1894, when said firm made an assignment, making defendant, L. J. Berry assignee, and turned over to him all

the property and assets of the firm, and the individual members, for the benefit of plaintiff's debts, which debts then amounted, respectively, after allowing all just credits, to the several amounts set out in the bill, and alleged that said firm, as plaintiffs were informed, owed debts to many other persons, which plaintiffs were unable to enumerate; that said debts all remained unpaid, except a credit of twelve and one-half per cent., paid by said assignee on plaintiffs' debts, respectively, and a credit of twenty-five dollars on debt of Boreman & Strauss; that there was a large amount of goods, wares, and merchandise, notes, accounts, and bonds of said firm, and of the notes and accounts of said Morrison, J. S. Berry, and W. E. Harris, amounting to several thousand dollars and more than sufficient to pay all the indebtedness of said firms and said individuals; that said L. J. Berry, assignee, had failed to properly execute said trust; that he had failed to furnish a proper invoice of said goods, notes, bonds, cash, and accounts of said firm, or of the property, notes, bonds, and accounts of the individuals making said assignment, and had failed to account for the moneys received by him for said goods and property. and on the said notes, bonds, and accounts, except the small payment of twelve and one-half per cent., as stated, paid by him on said debts; that they are entitled to have a settlement of the assignee's accounts, and a proper accounting by said assignee, and to have same applied to their debts, respectively, and file a copy of the deed of assignment; and prayed that the cause be referred to a commissioner for settlement of said assignee's accounts; that he be required to produce and account for all moneys, goods, and property, notes, bonds, and accounts, owned by said firm, or individuals; that he be decreed to pay plaintiff's debts, interest, and costs of this suit; that he be compelled to answer fully the bill, and file with his answer a full and complete statement of all goods property, real and personal, notes, bonds, and accounts of said firm and individuals, and that said Morrison, J. S. Berry, and Harris be required to answer the bill, and file with their answer a statement of all the property real and personal, etc., turned over by them, and each of them, to said trustee or assignee, etc.; and for general relief. On

the 27th of April the cause was referred to Commissioner W. F. Morrison, to settle the accounts of the assignee, Berry, to ascertain and report the debts against the firm of Sutton, Harris & Co., and of Harris, Berry & Co., with their amounts and priorities, and for which the funds in the hands of the assignee are liable, the apportionment of said funds among the creditors of said firms, with any other pertinent matter, etc. On the 31st of May, L. J. Berry, assignee, tendered his answer, which was filed, and plaintiffs replied generally thereto. The said answer denied all the material allegations of the bill; charging him with negligence, failing to account, etc.; averring that he furnished proper invoices shortly after he took charge, and filed with his answer list of claims so assigned to him, and a list showing, by items, the collections and receipts, and of his disbursements; alleging that about three-fourths of the claims were insolvent, and many of the solvent ones were met by offsets; that he had received from collections, the business as conducted by him in clearing out the stock of goods on hand, and from all sources, of the assets turned over to him, the sum of three thousand one hundred and six dollars and twenty-four cents, which he gives by items in list; and that he had disbursed in expenses necessarily incurred and distributed to creditors on the claims the total sum of three thousand two hundred and one dollars and eleven cents, and filed a statement thereof, but which list he claimed did not show all the charges he had a right to make for his own services, nor charges for attorney and counsel fees, which he desired to thereafter specify more particularly, and have allowed him, and that there were also pending settlements and adjustments between him and parties owing the firm, or who by the books of the company appeared to owe it, which matters he had partially, but not entirely, adjusted, and desired to make further report when such matters were fully adjusted, and filed a list of liabilities of said firm, so far as he had notice thereof, amounting to nine thousand five hundred and ninety-seven dollars and sixty-two cents; that he had paid out more than he had received from the assets of the firm; that there are claims in the list mentioned that might yet be realized; that he had been occasioned a great deal of

trouble, and had necessarily taken a great deal of time, in the adjustment and settlement of accounts and affairs of said assignors; that they had their business in a confused condition; and the books could not be relied upon for the ascertainment of the accounts due the firm, mainly by their failure to enter credits for amounts paid them on account with parties with whom they had dealings; and asks that his accounts be settled before a commissioner, and that he be relieved of the insolvent claims which came to his hands by virtue of the assignment, and that he have the proper credits for his services, and his necessary expenses for counsel, etc. On the 30th of August, 1897, E. S. Bland was substituted as commissioner for W. F. Morrison, to take the account ordered, and on the 7th of May, 1898, the cause came on to be heard, among other things, upon the report of E. S. Bland, filed April 23, 1898, and upon the exceptions thereto filed by plaintiffs and by defendant, L. J. Berry, assignee, and exhibits and depositions of witnesses taken before the commissioner and filed; and the court, not deeming it necessary to pass upon the exceptions at that time, re-committed the cause to Commissioner E. S. Bland, with directions to execute the order of reference theretofore made, and make settlement of the account of L. J. Berry, the assignee, and report the further facts as required by said order of reference. On the 19th day of August, 1898, Commissioner Bland filed his report, after retaining it in his office ten days after its completion, and having notified the attorneys of record in the cause of its completion. On the 30th of August, 1898, the cause was "heard on papers read on former hearings, former orders and decrees entered herein, and upon the second report of E. S. Bland, commissioner, filed herein on the 19th day of August, 1898, and exceptions of L. J. Berry to same, filed after the cause had been submitted and passed upon by the court, but before the decree was entered." The court overruled said exceptions, and confirmed the report of the commissioner, and proceeded to ascertain the amount due on each of the claims of plaintiffs and other creditors, "and the court ascertains that there is in the hands of said assignee the sum of two thousand one hundred and forty dollars and forty-one cents applicable to the payment of the

foregoing debts and the costs of this suit," and decreed that said L. J. Berry do pay two thousand one hundred and forty dollars and forty-one cents on account of the debts, as therein directed, after first paying the costs of the suit. The exceptions filed by defendant, Berry, and overruled by the court because filed too late, were to the effect that the commissioner should not have charged him personally with the sum of eight hundred and seventy-one dollars and thirty-three cents on account of judgments rendered in his favor as assignee against various parties, and in so far as he was therein charged personally with the amounts of notes to him as assignee in the amount of one thousand three hundred and sixty-seven dollars and forty cents, and that he should not be charged with the same, or any part thereof, as a personal liability; that it is simply shown that they were uncollected assets in his hands as assignee. The defendant L. J. Berry appealed from said decree, assigning as error that the court should not have decreed against him said sum of two thousand one hundred and forty dollars and forty-one cents, nor should it have entered a personal decree against him for any sum. The commissioner, after settling the accounts of the assignee, charging him with the assets that went into his hands, and giving him credit for his disbursements, allowances, insolvent notes, and accounts, etc., ascertains the unadministered assets in the assignee's hands to be..... $1,994 76

"To which should be added error in
   crediting cloak twice................ $  8 00
Thomas' board and expense account,
   erroneously credited................    25 50
Freight on machines, improperly credited.............................   112 15
                      —————    145 65

   Total unadministered assets        $2,140 41"

The commissioner having allowed the assignee credit "for insolvent notes and accounts" in the sum of two thousand two hundred and thirty-two dollars and forty-nine cents, the presumption is that the assets reported as in his hands are all good, and the commissioner does not report any assets lost by the negligence or carelessness of as-

signee. While the appellees in their brief speak of the neg-
ligence of the assignee, they say: "In this case nothing is
claimed by reason of the negligence of the assignee, but
the decree is only for the amount which the commissioner
actually ascertained to be in his hands." In his hands
how? Not as money which could be applied at once upon
the debts to be paid, but "in unadministered assets,"
which were not shown to have been lost through the as-
signee's negligence. "An assignee in the discharge of his
trust is bound to exercise ordinary diligence and pru-
dence, and may be held liable for such actual loss of assets
to the assigned estate as was caused by his culpable negli-
gence or mismanagement." 3 Am. & Eng. Enc. Law (2d
Ed.) 121, and cases there cited; Burrill, Assignm. § 410.
In *Knight* v. *Earl of Plimouth*, Atk. 480, s. c. 1 Dickens,
124, 126, Lord Hardwicke said: "If there is no *mala fides*,
nothing wrongful, in the conduct of a trustee, the court
will always favor him; for as a trust is an office necessary
between man and man, and which, if faithfully discharged,
is attended with no small degree of trouble and anxiety, it
is an act of great kindness in any one to accept it. To
add hazard or risk to that trouble, and to subject a trustee
to losses he could not foresee, would be a manifest hard-
ship, and would be deterring every one from accepting so
necessary an office." In *Thompson* v. *Brown*, 4 Johns. Ch.
619, 628, Chancellor Kent expresses his concurrence in
these views, and declares that when there is no just impu-
tation of *mala fides*, and the fault is but, at most, an error
of judgment, and a want of sharp-sighted vigilance, it
would have the appearance of great rigor, and be hardly
reconcilable with the doctrines of a court of equity to hold
a trustee responsible. In *Reitz* v. *Bennett*, 6 W. Va. 417,
it is said that, "an administrator ought not to be charged
with the debts due to the estate of his intestate at the time
when they become due, but only at the time when he act-
ually received them, except such debts as are lost by his
negligence or improper conduct." *Evans* v. *Shroyer*, 22
W. Va. 581; *Cavendish* v. *Fleming*, 3 Munf. 198; *Hooper* v.
*Hooper*, 32 W. Va. 526, (9 S. E. 937); *Holt* v. *Holt*, 46 W.
Va. 397, (35 S. E. 19). In the case at bar the commission-
er's report shows the amount of "unadministered assets"

to be two thousand one hundred and forty dollars and forty-one cents, after giving credit to the assignee for insolvent notes and accounts in more than that amount. The court confirmed the report of the commissioner, finding the amount of unadministered assets to be two thousand one hundred and forty dollars and forty-one cents, and then treated the amount as collected and available for immediate application to the debts and costs of suit, and decreed such payment and application by the said assignee, Berry. The said assignee offered, in open court, at the time of the submission of the cause, to produce said assets, and resign his trust, and moved the court for the appointment of a special receiver to take charge and dispose of such uncollected assets under the direction of the court. In *Reitz* v. *Bennett,* above cited (Syl., point 4): "Although no exceptions are filed to a commissioner's report, and the report is confirmed, if the decree of confirmation, upon its face, shows material error as to matter of law, prejudicial to the appellant, for such error the decree should be reversed." After confirmation of the report, the court should have directed the application of the proceeds of said assets, when collected, to the costs of the suit and the debts as ascertained, and provided for further settlement thereafter by the said assignee. For the reasons herein stated, the decree is reversed, and the cause remanded for further proceedings to be had therein.

*Reversed.*