IRA EYE

*v.*

CECIL NICHOLS

(No. 10373)

Submitted January 15, 1952. Decided April 22, 1952.

**76**

*Mahan, White & Higgins,* and *S. C. Higgins, Jr., R. A. Clapperton,* for appellant.

*Wolverton & Callaghan, G. D. Herold,* for appellee.

GIVEN, JUDGE:

Ira Eye instituted a chancery cause in the Circuit Court of Nicholas County against Cecil Nichols, appellant here, the object of which was to have cancelled two certain written agreements, executed by the named parties, dissolving a partnership arrangement previously existing, and which agreements effected a settlement as to the partnership property. As basis for the relief sought by Eye, the bill of complaint charged fraud on the part of Nichols in making certain representations as to the value of the business belonging to the partnership and managed solely by Nichols, located at Summersville, West Virginia, and that there was a mutual mistake of fact as to the value of that business at the time of the dissolution of the partnership. The circuit court found that no fraud existed, but held that there was a mutual mistake of fact, decreed that the dissolution agreements be cancelled, and that Eye recover of and from Nichols the sum of $3,210.40, being one half of the difference, as found by that court in the value of the Summersville business, and another business owned by the partnership and managed solely by Eye, located at Webster Springs, West Virginia. This Court granted an appeal from that decree.

About June 7, 1946, Eye and Nichols became equal partners in a business located in Summersville, known as the Summersville Heating and Plumbing Company and, about September 7, 1948, they became equal owners of a business located at Webster Springs known as the Standard Plumbing and Heating Company. Thereafter Eye managed the

Webster Springs business and Nichols managed the Summersville business. Neither of the partners had full or accurate information as to the business managed by the other, but trusted and relied upon the manager of the particular business as to the management thereof. This mutual arrangement was continued until about November, 1948, when Nichols suggested a dissolution of the partnership. After several conferences the parties agreed to a dissolution, executed written agreements effecting the dissolution and, as a settlement of the partnership affairs, Nichols transferred unto Eye all interest in and to the Webster Springs business, "including the stock in trade, monies in the bank, accounts receivable, and in that certain 1947 Model Ford Truck Motor No. 1516691, and in all other assets" used in connection with or as part of that business, and Eye transferred unto Nichols all of his interest in the Summersville business, "including the stock in trade, monies in the bank, accounts receivable, and in that certain 1948 Model F2 Ford Truck, Serial No. 18922, and in all other assets" used in connection with or as part of that business. The assignments were made by separate contracts and were to be effective as of December 31, 1948.

In reaching an agreement as to the basis of the settlement no actual audit or inventory of the assets of either of the businesses was made. Eye relied upon the representations of Nichols as to the probable value of the Summersville business and Nichols relied upon representations of Eye as to the probable value of the Webster Springs business. From such representations, and the discussions, Eye concluded that the value of the Summersville business was approximately $20,000.00, and Nichols concluded that the value of the Webster Springs business was approximately $18,000.00. As before indicated, however, the parties agreed that Eye should have the Webster Springs business as his full share of the assets of the partnership property and that Nichols should have the Summersville business as his full share of the assets of the partnership property. In reaching the conclusion as to the method of settling the partnership affairs, it is

apparent that the parties considered factors other than the actual or net inventory value of the merchandise and accounts, such as the necessity of the dissolution, the place of residence of the parties, the location of the respective businesses, ánd the potential earnings of each business.

The parties appear to have been entirely satisfied with the dissolution agreements, and the division of the assets of the partnership property, until Eye discovered that the partnership return of the Summersville business, made for federal income tax purposes for the year 1947, disclosed a net income of $5,402.14; that an amended return filed by Nichols subsequent to the dissolution disclosed a net income of $10,297.57; and that an audit made later by the United States Treasury, Internal Revenue Service, disclosed a net income for that year of $19,572.37. Such a tax return for the year 1948 disclosed a net income of $14,298.54 but, upon an audit by the Internal Revenue Service, was increased to $17,539.12. These audits indicated a much larger income from the Summersville business than alleged by Eye to have been represented to him by Nichols.

The trial court directed that an audit be made of the assets of the two businesses as of the date of the dissolution, which was done, and the result of such audits is reflected in the evidence. That court, after hearing the evidence offered by the parties, found and decreed that the actual value of the Summersville business, at the time of the dissolution, was $18,756.77, and that the actual value of the Webster Springs business as of that time was $12,335.96; that no fraud had been proved; and that there was a mutual mistake of fact as to the respective values of the two businesses. The circuit court cancelled the dissolution agreements and decreed that Eye have sole ownership of the Webster Springs business and that Nichols have sole ownership of the Summersville business, as of December 31, 1948, as their respective interests in the partnership property, and that Eye recover of and from Nichols the sum of $3,210.40, being one half of the differ-

ence between the value of the two businesses, as determined by that court.

Eye, cross-assigning error here, contends that the circuit court was in error in finding and decreeing that no fraud was established and that the clear weight of the evidence establishes fraud on the part of Nichols with respect to the representations made by him as to the value of the Summersville business. We are of the opinion, however, that the record discloses substantial basis for the court's finding in that respect, and are not disposed to disturb that finding. The contention that Nichols made false representations as to the value of the Summersville business rests largely upon the tax returns showing a larger income for the Summersville business than alleged to have been represented to Eye by Nichols. Nichols, however, denies making any such representations, and testifies to the effect that the amounts of such income were unknown to him until after the preparation of the tax returns by an accountant sometime subsequent to the dissolution of the partnership. Moreover, the finding of the trial court that the Summersville business was actually worth only $18,756.77, considerably less than the value represented by Nichols, would indicate strongly that no fraudulent intent existed on the part of Nichols in making the representations.

In reaching the conclusion that the circuit court correctly found that no fraud on the part of Nichols had been proved, we have not overlooked the rule requiring that partners, in their dealings with each other, must always observe the highest degree of good faith. See *Fouse* v. *Shelly,* 64 W. Va. 425, 63 S. E. 208; *Benedetto* v. *Di Bacco,* 83 W. Va. 620, 99 S. E. 170. The rule, however, must not be so applied as to defeat the rights of partners to effect a dissolution of a partnership by contract, if fairly entered into. The burden of establishing good faith in a transaction between partners should not be required of a partner merely upon a charge of fraud. "* * * In a sale between living partners, if the seller seeks to have the sale set aside on the ground that the purchaser has fraudulently with-

held information affecting the sale, the burden is upon the seller to establish the charge by clear and cogent evidence. When the purchaser has proved a complete sale, the law implies good faith and honesty in the contract, in the absence of evidence to the contrary. In every transaction lawful in itself, the law supports a presumption of honesty and good faith. * * *." 14 M. J., Partnership, Section 26. See *Benedetto* v. *Di Bacco, supra; Welch Publishing Co.* v. *Johnson Realty Co.*, 78 W. Va. 350, 89 S. E. 707, L. R. A. 1917A 200.

The controlling question relates to the contention of Eye that there existed a mutual mistake of fact as to the relative value of the two businesses. The facts relied upon by Eye as disclosing a mutual mistake of fact are practically the same as the facts upon which Eye relies as establishing fraud on the part of Nichols. It will be recalled that the partners entered into the dissolution agreements upon the basis of the businesses being of approximate equal values, the representations of Eye being to the effect that the value of the Webster Springs business was approximately $18,000.00, and the representations of Nichols being to the effect that the value of the Summersville business was approximately $20,000.00; and that the subsequent tax returns of the auditor disclosed large profits from the Summersville business. It will also be recalled that Eye testified to the effect that Nichols represented the profits earned by the Summersville business for the year 1948 to have been only $7,000.00, whereas the profits for that year, as disclosed by the tax returns, were approximately ten thousand dollars more. Like charges were based on tax returns for the year 1947. The contention of Eye is that the large profits indicated by the tax returns established conclusively that the Summersville business was worth at least $40,000.00. The circuit court, however, heard the witnesses of both parties, in open court, testify as to the actual value of the two businesses, and found that the value of the Summersville business was $18,756.77 and that the value of the Webster Springs business was $12,335.96 as of December 31, 1948.

The finding of the trial court as to the Summersville business discloses a value of approximately two thousand dollars less than the value represented by Nichols, while the value of the Webster Springs business, as found by the trial court, as of the same date, was approximately six thousand dollars less than the value thereof represented by Eye. The actual difference in the two values, as fixed by the trial court, was $6,420.81. From this finding it will be noticed that if Nichols made any mistake in estimating or in representing to Eye the value of the Summersville business it was to his own prejudice, not to the prejudice of Eye. In fact, the recovery allowed by the trial court to Eye was not based on any mistake of Nichols, but on the mistake of Eye, and as to a matter concerning which Eye alone made representations, the accuracy of which representations were known, or should have been known, to him, as sole manager of the Webster Springs business.

In *Simmons* v. *Looney,* 41 W. Va. 738, 24 S. E. 677, in considering the effects of a unilateral mistake, at page 742 of the West Virginia Reports, this Court stated: "* * * The only mistake he pleads is that he did not know how much timber Simmons had furnished. This fact he was bound to know; and, as it was readily ascertainable, not to know it was negligence. It was not misrepresented to him by Simmons. By no means is it the rule that in every instance money paid in mistake or ignorance of fact may be recovered back. The fact not known must be material in the matter. And, even where the fact is material, that alone is not always enough. 'It must be such as the party could not by reasonable diligence get knowledge of when he was put upon inquiry; for if, by such reasonable diligence, he could have obtained knowledge of the fact, equity even will not relieve him, since that would be to encourage culpable negligence.' So the law is stated by Judge Haymond in *Harner* v. *Price,* 17 W. Va. 523, 545, on the text of Judge Story. * * *." See *Benedetto* v. *Di Bacco., supra.* It is clear from the record that Nichols had no knowledge as to the accuracy of the representations made by Eye concerning the value of the

Webster Springs business, and we find no reason why controlling weight should be given to the tax returns or audits. Conceivably the tax returns and audits would not necessarily reflect the value of the businesses and neither the tax returns nor audits would reflect factors considered by the partners other than inventory values.

In *Biggs* v. *Bailey,* 49 W. Va. 188, 38 S. E. 499, syllabus, Point 2, this Court held: "A court of equity will relieve against a mutual mistake of law as well as of fact, when such mistake is established by clear and convincing proof, and the rights of innocent third parties do not interfere."

In 58 C. J. S., page 832, mutual mistake is defined as follows: "The term 'mistake' is often employed in the sense of 'mutual mistake,' which means a mistake reciprocal and common to both parties, when each alike labored under the same misconception in respect of the terms of a written instrument; a mistake common to all the parties to a written instrument, and it usually relates to a mistake concerning the contents or legal effect. Where there is a mutual mistake as to antecedent private rights, it has been held that the mistake partakes of the nature of a mistake of fact. 'Mutual mistake' is distinguishable from 'unilateral mistake.' "

In *Welch Publishing Co.* v. *Realty Co.,* 78 W. Va. 350, 89 S. E. 707, L. R. A. 1917A 200, specific performance of a contract to sell real estate was sought. The description of the lot gave rise to the controversy. The lot shown upon the map as Lot No. 4 had a frontage of seventy feet, but the grantor mistakenly believed it to have had a frontage of fifty feet. The Court held, Point 3, syllabus: "A mistake on the part of the vendor of such a lot, as to its area or dimensions, inducing a sale thereof at a smaller price than he would have asked, had he been cognizant of its size, not in any way occasioned or concealed by conduct of the vendee, constitutes no ground for rescission of the contract, nor does his inadvertant failure to specify a portion of the lot as the subject of sale at the price named." In the opinion in that case the Court stated:

"Mistakes under the influence of which parties make contracts, or mistakes in the formulation thereof, often afford ground for relief in equity. But to have such effect, the mistake, ordinarily, must be mutual or the mistake of one party must have been induced or caused by fraud on the part of the other. In either of these cases, a court of equity will rescind the contract. *Biggs* v. *Bailey,* 49 W. Va. 188; *Brown* v. *Rice,* 26 Gratt. 467; *Kerr on Fraud,* 413. A mistake made in the expression of the contract is always fatal, for, in that case, the written contract is not the one actually made. Kerr on Fraud, 413. 'If the mistake is not in the expression of the agreement, but in some fact materially inducing it, the mere knowledge in the one party of the mistake in the other, does not in the absence of a duty to disclose, or other special circumstances, constitute a sufficient ground in equity for avoiding it.' Kerr, Fraud & Acc. 414. *Bank et al.* v. *Campbell et al.,* 75 Va. 455. But in granting such relief, equity does not declare there was no contract. Its jurisdiction stands upon the assumption that there is one and is interposed to relieve from it."

In the *Benedetto* case this Court held, syllabus, Points 3 and 4:

"3. A settlement of the affairs of a partnership entered into between the parties, by which their respective interests are fully determined and fixed, is presumptively correct, and a party thereto who would overthrow the same has the burden of showing that it was brought about by fraud, accident or mistake."

"4. A member of a partnership seeking to re-open a settlement of the affairs thereof, upon the ground of accident, mistake or fraud therein, must allege and prove the particular facts wherein such accident, mistake or fraud exists, failing in which his bill will be dismissed."

In 9 Am. Jur., Cancellation of Instruments, Section 34, it is stated: "While equity will relieve against a plain mistake, such a mistake cannot be said to arise in a matter which was considered doubtful and treated accordingly. Nor can a party, who enters into a contract in conscious

ignorance of facts which, he apparently concluded would not influence his action, or induce him to refrain from entering into the contract, be relieved therefrom, on the ground of mutual mistake, when revelation of the true state of facts disappoints his anticipations. Negligence on part of the complainant, contributing to the mistake, will also prevent the securing of relief; the cases are practically unanimous in holding that mistake which results from failure to exercise that degree of care and diligence which would be exercised by persons of reasonable prudence under the same circumstances will not be relieved against. * * *."

Authorities are not unanimous as to whether recovery may be had where a mistake is unilateral, not mutual. See 9 Am. Jur., Cancellation of Instruments, Section 33, and cases there cited. We find, however, that the authorities are practically unanimous in holding that where a mistake was the result of lack of ordinary diligence on the part of the person seeking recovery, in connection with a duty charged to him, and the person against whom recovery is sought had no knowledge relating thereto, and did not induce the improper action, recovery should be denied. See 30 C. J. S., Equity, Section 47, and cases there cited. In *Simmons* v. *Looney, supra,* Point 2, syllabus, this Court held: "If one under legal duty to ascertain, and with means to ascertain, a fact, pays money in ignorance of it, he can not recover back." See *Holt* v. *Holt,* 46 W. Va. 397, 35 S. E. 19; *Bank* v. *Bank,* 66 W. Va. 545, 66 S. E. 761; *Welch Publishing Co.* v. *Realty Co., supra.*

In applying these applicable rules to the instant case, we must necessarily hold that Eye failed to establish any basis for relief as to any mistake of fact. If a mistake existed it related alone to the Webster Springs business, and was due solely to the failure of Eye to inform himself as to the accuracy of the representations. Nichols relied and acted solely upon the representations made by Eye, which he had a right to do, since Eye was the sole manager of the business and knew, or should have known, the value of that business before making the representations.

There is no contention that Nichols had any knowledge as to the inaccuracy of the representations or that he in any manner induced them. The contracts entered into between partners dissolving the partnership can not be lightly ignored. *Benedetto* v. *Di Bacco, supra; Holt* v. *Holt, supra.*

Appellant contends that the decree of the circuit court should be reversed for two further reasons: (1) That the proof of a mistake on the part of Nichols as to the value of the Summersville business does not correspond to the allegations of the bill of complaint charging a mutual mistake as to the value of the Webster Springs business; and (2) where a court decrees the dissolution of a partnership a division of the assets of the partnership can not be decreed until after the payment of debts of the partnership has been properly provided for. To sustain these propositions appellant relies upon the holdings pronounced in *Doonan* v. *Glynn,* 26 W. Va. 225; *Hyre* v. *Lambert,* 37 W. Va. 26, 16 S. E. 446; *Floyd* v. *Duffy,* 68 W. Va. 339, 69 S. E. 993, 33 L. R. A. (N. S.) 883; *Jones* v. *Rose,* 81 W. Va. 177, 94 S. E. 41. In view of the conclusions of the Court announced above, however, we need not determine whether such holdings apply to the facts in the instant case.

The final decree of the circuit court complained of is reversed and the bill of complaint dismissed.

*Reversed and dismissed.*